UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X  Case No.

DENISSE VALDEZ and PAULA MONTANEZ,

                              Plaintiffs,              **COMPLAINT**

-against-

FRESH MEADOWS WINGS, LLC, COLIN PARKER,   **PLAINTIFF DEMANDS**
*Individually*, RYAN KRANE, *Individually*, and       **A TRIAL BY JURY**
HOOTERS OF AMERICA, LLC.

                          Defendants.

------------------------------------------------------------------X

      Plaintiff, DENISSE VALDEZ and PAULA MONTANEZ, by their attorneys, PHILLIPS

& ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants as follows:

### NATURE OF THE CASE

1.     Plaintiffs complain pursuant to <u>Title VII of the Civil Rights Act of 1964</u>, as codified, 42

     U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of

     1991, Pub. L. No. 102-166 ("Title VII") and the <u>New York City Human Rights Law</u>,

     New York City Administrative Code § 8-502(a), *et. seq.,* and seek damages to redress the

     injuries they have suffered as a result of being <u>sexually harassed</u>, <u>discriminated against on

     the basis of gender</u>, and <u>retaliated against</u> by their employer.

### JURISDICTION AND VENUE

2.     Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§

     1331 and 1343.

3.     The Court has supplemental jurisdiction over the claims of Plaintiffs brought under city

     law pursuant to 28 U.S.C. §1367.

4.      Venue is proper in this district pursuant to 28 U.S.C. 1391(b) based upon Defendants' principle place of business within the Eastern District of New York.

## PROCEDURAL PREREQUISITES

5.      Plaintiffs filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6.      Plaintiffs received a Notice of Right to Sue from the EEOC, dated September 14, 2016, with respect to the herein charges of discrimination.  A copy of the Notice is annexed hereto.

7.      This Action is being commenced within ninety (90) days of receipt of said Right to Sue.

## PARTIES

8.      That at all times relevant hereto, Plaintiff DENISSE VALDEZ ("VALDEZ") was and is a resident of the State of New York and the County of Queens.

9.      That at all times relevant hereto, Plaintiff PAULA MONTANEZ ("MONTANEZ") was and is a resident of the State of New York and the County of Richmond.

10.     That at all times relevant hereto, Defendant FRESH MEADOWS WINGS, LLC ("FRESH MEADOWS WINGS") was and is a domestic limited liability company, duly existing pursuant to, and by virtue of, the laws of the State of New York.

11.     Defendant FRESH MEADOWS WINGS owns and operates a restaurant located at 61-09 190th Street, Fresh Meadows, New York, 11365.

12.     Defendant FRESH MEADOWS WINGS, LLC ("FRESH MEADOWS WINGS") is a franchise of HOOTERS OF AMERICA LLC ("HOOTERS"), an Atlanta-based operator and franchiser of over 430 Hooters locations.

13.     That at all times relevant hereto, Plaintiffs VALDEZ and MONTANEZ were employees of Defendant FRESH MEADOWS WINGS and HOOTERS.

14.   That at all times relevant hereto, Defendant COLIN PARKER ("PARKER") was and is an employee of Defendant FRESH MEADOWS WINGS and Defendant HOOTERS, holding the position of "Director of Operations."

15.   That at all times relevant hereto, Defendant PARKER was Plaintiff MONTANEZ and Plaintiff VALDEZ's supervisor and had supervisory authority over Plaintiffs. Defendant PARKER had the authority to hire, fire or affect the terms and conditions of Plaintiffs' employment.

16.   That at all times relevant hereto, Defendant RYAN KRANE ("KRANE") was and is an employee of Defendant FRESH MEADOWS WINGS and Defendant HOOTERS, holding the position of "Manager."

17.   That at all times relevant hereto, Defendant KRANE was Plaintiff VALDEZ's supervisor and had supervisory authority over Plaintiff. Defendant KRANE had the authority to hire, fire or affect the terms and conditions of Plaintiff's employment.

18.   Defendant FRESH MEADOWS WINGS, HOOTERS, PARKER, and KRANE are collectively referred to herein as "Defendants."

## MATERIAL FACTS

### Plaintiff Denisse Valdez

19.   On or around June 2015, Defendant FRESH MEADOWS WINGS hired Plaintiff VALDEZ as a "waitress" earning approximately $5.00 per hour plus tips.

20.   From the very outset, Plaintiff VALDEZ was subjected to severe and pervasive sexual harassment and discrimination perpetrated by her supervisor Defendant KRANE.

21.   **Defendant KRANE's inappropriate behavior mostly manifested in aggressive sexual harassment. For example, on more than one occasion, Defendant KRANE placed his hands around Plaintiff's neck and began to choke her in an intense sexual manner;**

**mimicking sadistic/masochist behavior.** Each time Defendant KRANE touched Plaintiff, she pushed Defendant KRANE away and emphatically rejected his sexual advances.

22. Defendant KRANE also developed a habit of lurking behind Plaintiff VALDEZ. He would stand so close to Plaintiff that she would feel his breath on her neck and back. **Defendant KRANE would also get close enough to Plaintiff VALDEZ to rub his genitalia against Plaintiff's buttocks.**

23. On at least one occasion, Defendant KRANE directly threatened Plaintiff VALDEZ, telling her that he was going to strangle her. Plaintiff understood this comment to be a violent and sexually motivated advance.

24. Defendant KRANE would address Plaintiff VALDEZ by uncalled for and inappropriate pet names, such as "sweetheart", "dear" or "my love".

25. Defendant KRANE made several sexually inappropriate comments to Plaintiff such as: "you're so beautiful" and "if only you didn't work here." Defendant KRANE also delved into the details of Plaintiff's personal life, including inquiries into her relationship status, or, more disturbingly, how she got home from work.

26. Exacerbating these already appalling acts, Defendant KRANE would often stare at Plaintiff VALDEZ's breasts when not directly engaging with her.

27. On more than one occasion, when Plaintiff VALDEZ arrived to work, Defendant KRANE would follow her into the Image Room where she changed into her uniform.

28. In or about the end of June 2015, Plaintiff VALDEZ went to the manager's office to get medicine for her headache. As Plaintiff entered the office, she noticed that Defendant KRANE was inside. As Plaintiff was reaching for the medication kit, Defendant KRANE grabbed Plaintiff by the neck and arm and pushed her against the door.

4

29.    Defendant KRANE is physically much larger than Plaintiff, overpowering her with ease. As a result Plaintiff was unable to push him off of her body. Terrified, Plaintiff begged him stop, to release her. Instead, Defendant KRANE laughed and asked her if she likes his "new move." After significant struggling and pleading, Plaintiff VALDEZ was finally able to escape and ran away from Defendant KRANE.

30.    **In or around early August 2015, Defendant KRANE slipped behind Plaintiff VALDEZ and, once again, placed his hand around her neck. Startled and fearing attack, Plaintiff slapped Defendant in self defense. Defendant KRANE suggested that he was sexually aroused by Plaintiff's slap and said, "you would be surprised of what satisfies me."** Plaintiff again demanded that Defendant stop touching her.

31.    On another occasion, Plaintiff VALDEZ was standing near the Image Room when Defendant KRANE deliberately attempted to bump into Plaintiff VALDEZ with his genitalia touching Plaintiff's buttocks. As he walked by, he suggestively said "oh, almost."

32.    In or about the middle of August 2015, Plaintiff was in the Image Room when Defendant KRANE came up behind Plaintiff and began to choke her yet again. Andrea, a co-worker of Plaintiff, witnessed Defendant KRANE forcibly constraining Plaintiff with his hands wrapped around her neck.

33.    In fact, a number of other employees knew of Defendant KRANE'S horrific behavior, but explicitly advised Plaintiff not to report it because Defendant KRANE and Defendant PARKER were close friends.

34.    Defendants were well aware of Defendant KRANE's propensity for sexual harassment, assault, and discrimination, but refused to take action against him, despite repeated reports from Plaintiff MONTANEZ. Defendant KRANE continued to harass and

inappropriately touch Plaintiff VALDEZ even after Plaintiff MONTANEZ attempted to sanction him upon witnessing one such instance of contact.

35.    In or around late August 2015, Plaintiff VALDEZ and another employee, Eleni Dolti, engaged in a physical altercation. Defendant KRANE fired both Plaintiff VALDEZ and Ms. Dolti without conducting any investigation. Suspiciously, one week later, Ms. Dolti was working for Defendants again.

36.    Upon information and belief Ms. Dolti, instigated a fight with Plaintiff at the behest of Defendants to create an opportunity for Plaintiff to be terminated.

37.    Upon information and belief, Plaintiff was fired for not acquiescing to Defendant KRANE's sexual advances.

38.    On November 18, 2015, Plaintiff MONTANEZ sent a formal complaint to Defendant PARKER. The complaint addressed Defendant KRANE's pattern of discriminatory behavior, citing, among other things, the repeated instances of Defendant KRANE choking her.

39.    The above acts are only an example of the acts Plaintiff VALDEZ was exposed to on a regular basis by Defendants.

40.    Plaintiff was regularly exposed to a sexually offensive, violent and hostile work environment.

41.    Plaintiffs have been unlawfully discriminated against, humiliated, retaliated against, degraded, victimized and embarrassed; and as a result suffers loss of rights, emotional distress, loss of income, earnings.

42.    Plaintiffs' performance was, upon information and belief, above average during the course of employment with the Defendants.

43.    Plaintiff VALDEZ was treated differently (sexually harassed and propositioned) by

Defendant because of her gender (female). Plaintiff MONTANEZ was retaliated against by Defendants for reporting instances of discriminatory conduct.

44.    Upon information and belief, Defendant's sexually harassing behavior was also motivated by a general hostility toward Plaintiff VALDEZ based on her gender.

45.    Defendants' actions and conduct were intentional and intended to harm Plaintiffs.

46.    As a result of the Defendants' discriminatory and intolerable treatment, Plaintiffs suffered severe emotional distress, physical ailments, and physical injuries.

### Plaintiff Paula Montanez

47. In or around February 2009, Plaintiff MONTANEZ started working for HOOTERS as a Training General Manager at the Fresh Meadows location which was previously operated by Strix LLC.

48.    Due to noncompliance with HOOTERS, Strix LLC lost its franchise in or around February 2013.

49.    In or around April 2013, Defendant PARKER reached out to Plaintiff MONTANEZ and asked her to reopen the Fresh Meadow location for another franchisee, a position Plaintiff happily accepted. Plaintiff MONTANEZ started assisting with the reopening of a HOOTERS location in Farmingdale, and moved to the Fresh Meadows location in July 2013. The Fresh Meadows location opened in or around November of that year. At that time, Plaintiff MONTANEZ was employed as a "General Manager," earning approximately $60,000. Due to her excellent work performance, she later received a raise, earning approximately $69,000 per year.

50.    Within one year of opening, in or around July 2014, Defendant PARKER transferred Defendant KRANE, then an Assistant Manager, from a location in Albany to assist Plaintiff MONTANEZ.

51. Defendant PARKER hired another Assistant Manager, Thomas Park, in or around September 2014.

52. With the addition of Defendant KRANE and Mr. Park, the atmosphere of the Fresh Meadows location changed substantially, and employees were routinely subjected to an ongoing and severe environment of sexual harassment and discrimination perpetrated by Defendants.

53. In or around late July 2015, Plaintiff MONTANEZ was approached by an employee, Christina Giambolvo, who reported that another employee, Christina Kasman was sexually harassed by Mr. Park. Plaintiff MONTANEZ, following protocol, immediately reported this to Defendant PARKER.  Defendant PARKER claimed to have opened an investigation, and transferred Mr. Park to a location in Farmingdale.

54. Unfortunately, Defendant PARKER seized upon Plaintiff MONTANEZ's sudden car accident on August 10, 2015 to return Mr. Park to the Fresh Meadows location. Defendant PARKER left Plaintiff MONTANEZ a message while she was on medical leave stating: "I'm sending Thomas Park back to Fresh Meadows and not because we're desperate for managers but because Christina Kasman is OK with Thomas working opposite shifts."

55. Returning to work late September 2015, Plaintiff MONTANEZ found that Ms. Kasman never authorized Mr. Park to work around Christina Kasman, nor did Defendant PARKER ever approach her about the issue. In fact, Defendant PARKER placed Mr. Park on the same shifts as the woman he sexually harassed.

56. The environment only worsened after Plaintiff MONTANEZ's return, and she soon had a violent encounter with Defendant KRANE. In early October 2015, Plaintiff MONTANEZ witnessed Defendant KRANE tell a waitress to "shut up before I stick this

stapler in your pussy". Plaintiff MONTANEZ had verbally warned Defendant KRANE about his inappropriate an offensive behavior on many occasions. Defendant KRANE had a habit of lusting after fellow female employees and speaking inappropriately of their bodies.

57.   As a result, Plaintiff MONTANEZ routinely documented Defendant KRANE's abhorrent behavior, and reported this to Defendant PARKER. Defendant PARKER advised Plaintiff MONTANEZ not to give Defendant KRANE a notice until he arrived for a meeting.

58.   When the meeting finally took place, Defendant PARKER ordered Plaintiff MONTANEZ to overlook Defendant KRANE's repulsive behavior, and instead praise him for his supervision while she was absent on medical leave.

59.   Instead of reprimanding the employee for clearly discriminatory and appalling behavior, Defendant PARKER chose to ignore Defendant KRANE's misdeeds, thus enabling further sexual harassment and discrimination of other employees.

60.   When Plaintiff MONTANEZ told Defendant PARKER that she disagreed with his willful oversight, Defendant PARKER threatened Plaintiff's employment by telling her that he would write her up if she did not "bite the bullet" and cover for Defendant KRANE's illegal behavior.

61.   Clearly, reasoning with Defendant PARKER was not an option, so Plaintiff MONTANEZ turned to Marc Phaneuf, the owner of the Fresh Meadows location, as well as eight other stores in the Hooters New England franchise, emailing him the details of her encounter with Defendants. The next day, Hector Rodriguez, General Manager of Farmingdale visited the Fresh Meadows location to supplant Plaintiff MONTANEZ. Mr. Rodriguez assumed the position of Regional Manager, and informed Plaintiff that she

9

should report to him.

62.   In or around late October 2015, Plaintiff VALDEZ approached Plaintiff MONTANEZ about the circumstances of her termination, as discussed in depth below. Plaintiff MONTANEZ forwarded her complaint to Mr. Rodriguez with a notation asking that he pursue the matter.

63.   On or around February 22, 2016, Steve Caroll from Human Resources visited Fresh Meadows regarding an investigation into Defendant KRANE's sexual harassment of Plaintiff VALDEZ, with the purpose of clearing Defendant KRANE's name. Mr. Caroll asked Plaintiff MONTANEZ to be honest in writing a statement, and informed him of Defendant PARKER's continued retaliation for her initial reports against Defendant KRANE.  Plaintiff MONTANEZ wrote a truthful statement corroborating Plaintiff VALDEZ's complaint of sexual harassment and has been further retaliated for it.

64.   In or around mid-March 2016, the EEOC called the store to request the contact information for Human Resources, which Plaintiff MONTANEZ provided.

65.   On or around March 20, 2016, Defendant PARKER surprised Plaintiff MONTANEZ by interrupting a pre-shift meeting to commandeer the attention of the employees. Defendant PARKER lectured the women on what he expected Hooters Girls to look like, including applying specific heat to their hair to make it "first date hot" and singling out women if he felt they needed to invest in a "bombshell bra." Defendant PARKER's aggressive and offensive orders made many employees uncomfortable, and at least one approached Plaintiff MONTANEZ after the lecture to express her concerns.

66.   On or around April 18, 2016, Defendant PARKER blindsided Plaintiff MONTANEZ in what should have been a meeting regarding management prospects to railroad her with fictitious or exaggerated notices against her. Defendant PARKER blamed her for others

resigning, including Defendant KRANE, and blamed her for the B grade earned by the restaurant while she was absent on medical leave. Plaintiff MONTANEZ protested each of the notices that falsely blamed her for events either out of her control, or made as a team decision, and refused to sign them. Plaintiff told Defendant PARKER: "I didn't tell Thomas to sexually harass Christina, I didn't tell Ryan to sexually harass employees and have relations with a few of them as well, I didn't tell Edvin to have a relationship with a Hooters girl and I am too busy running shifts and putting out flames that Adnan cases with his incompetence."

67.   Departing the meeting, Plaintiff MONTANEZ reported the incident to Mr. Caroll, who said that he could not do anything as Defendant PARKER was his boss, but that he would talk to him.

68.   Physically sick from the meeting, Plaintiff MONTANEZ left work to see a doctor, who advised her to take a week of leave to recuperate. Later that day, Kayla Vali, a fellow employee and trainer, emailed Plaintiff MONTANEZ to inform her that she overheard Defendant PARKER on the phone planning to find Plaintiff MONTANEZ's replacement.

69.   In fact, the employees of the Fresh Meadow location stand resoundingly behind Plaintiff MONTANEZ, and created an email group of their own volition to express their support for her.

70.   On or around April 19, 2016, Plaintiff called Mr. Rodriguez, who merely informed her that he had no idea what was going on. Mr. Caroll never followed up with Plaintiff.

71.   On or around April 26, 2016, Plaintiff MONTANEZ returned to work and sent both Mr. Caroll and Mr. Phaneuf a detailed overview of Defendants' retaliatory conduct against her.

72.   That same night, Defendant PARKER posted an ad for Plaintiff MONTANEZ's position

online.

73. The next day, on or around April 27, 2016, Mr. Caroll visited the Fresh Meadows location, sitting at the back table with a notepad and not explaining himself until Plaintiff MONTANEZ approached him. Instead of investigating Defendants' abhorrent and illegal treatment of their employees, including the retaliation against Plaintiff MONTANEZ, Mr. Caroll admitted that he was investigating the employees themselves.

74. On or around April 28, 2016, as Plaintiff entered her office after a pre-shift meeting, she found Defendant PARKER, Mr. Caroll and Nicole, a marketing manager, waiting in her small office. Defendant PARKER accused Plaintiff MONTANEZ of creating a hostile working environment and proceeded to terminate her on the spot.

75. As a result of the acts and conduct complained of herein, Plaintiffs suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiffs have also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiffs have further experienced severe emotional and physical distress.

76. As a result of the above, Plaintiffs have been damaged in an amount in excess of the jurisdiction of the Court.

77. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Plaintiffs demand Punitive Damages as against all the Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendant)

1

2

78. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

79. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiffs complain of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender.

80. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff VALDEZ because of her gender.

### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE VII
### (Not Against Individual Defendant)

81. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

82. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

83. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq. by discriminating against Plaintiffs with respect to the terms, conditions or privileges of employment because of their opposition to the unlawful employment practices of Defendants.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

84.    Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

85.    The New York City Administrative Code §8-107(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

86.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff VALDEZ because of her gender (sexual harassment).

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

87.    Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

88.    The New York City Administrative Code §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

89.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(6) by aiding, abetting, inciting, compelling and coercing the

above discriminatory, unlawful and retaliatory conduct.

**AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**

90. Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

91. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

92. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiffs because of their opposition to the unlawful employment practices of Defendants.

**JURY DEMAND**

93. Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs respectfully request a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by <u>Title VII of the Civil Rights Act of 1964</u>, as amended, 42 U.S.C. §2000e *et. seq.*, and the <u>New York City Human Rights Law</u> in that Defendants <u>sexually harassed Plaintiff</u>, <u>discriminated against Plaintiff</u> on the basis of her gender, and <u>retaliated against Plaintiffs</u> for objecting to, and complaining about, Defendants' discrimination;

B. Awarding damages to Plaintiffs for all lost wages and benefits resulting from Defendants' unlawful sexual harassment, discrimination and retaliation and to otherwise make them whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiffs compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to their reputation in an amount to be proven;

D. Awarding Plaintiffs punitive damages;

E. Awarding Plaintiffs attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
       October 7, 2016

                                   **PHILLIPS & ASSOCIATES,**
                                   **ATTORNEYS AT LAW, PLLC**

By: _____
            Marjorie Mesidor
            Brittany Stevens
            *Attorneys for Plaintiff*
            45 Broadway, Suite 620
            New York, New York 10006
            (212) 248-7431
            mmesidor@tpglaws.com
            BStevens@tpglaws.com

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: Denisse Valdez<br>117-01 14th Avenue<br>College Point, NY 11356 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|

|  | ☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* | RECEIVED SEP 21 2016 BY: |  |
|---|---|---|---|

| EEOC Charge No.<br><br>520-2016-01709 | EEOC Representative<br>**Sarina L. Shaver,**<br>**Investigator** | Telephone No.<br><br>**(212) 336-3776** |
|---|---|---|

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

- [X] More than 180 days have passed since the filing of this charge.

- [ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

- [X] The EEOC is terminating its processing of this charge.

- [ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

- [ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

- [ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Kevin J. Berry,     9/14/16

**Kevin J. Berry,**     *(Date Mailed)*
**District Director**

Enclosures(s)

cc:      Attn.
       **Director of Human Resources**
       **FRESH MEADOWS WINGS LLC**
       **61-09 190th Street**
       **Fresh Meadows, NY 11365**

       **Marjorie Mesidor, Esq.**
       **PHILLIPS AND DASSOCIATES**
       **45 Broadway, Suite 620**
       **New York, NY 10006**

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: Paula Montanez<br>107-39 121st Street<br>South Richmond Hill, NY 11419 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | RECEIVED<br>SEP 21 2016<br>BY: |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2016-03267 | Sarina L. Shaver,<br>Investigator | (212) 336-3776 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| [X] | More than 180 days have passed since the filing of this charge. |
|---|---|
| ☐ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| [X] | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

| ☐ | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
| ☐ | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

_____   9/14/16
Kevin J. Berry,                          *(Date Mailed)*
District Director

cc:   Attn
      Director of Human Resources
      FRESH MEADOWS WINGS LLC
      61-09 190th Street
      Fresh Meadows, NY 11365

      Marjorie Mesidor, Esq.
      PHILLIPS & ASSOCIATES
      45 Broadway, Suite 620
      New York, NY 10006